# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAPOLEON B. JALOS,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. EDCV 17-01363-AFM<br><br>**MEMORANDUM OPINION AND ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying his application for Social Security disability insurance benefits. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. This matter is now ready for decision.

## BACKGROUND

On March 6, 2013, Plaintiff filed an application for disability insurance benefits, alleging disability since July 22, 2011. Plaintiff's application was denied initially and on reconsideration. (Administrative Record ["AR"] 78-101.) A hearing took place on December 4, 2015 before an Administrative Law Judge ("ALJ") at

which Plaintiff, his attorney, and a vocational expert ("VE") were present. (AR 37-77.)

In a decision dated January 20, 2016, the ALJ found that Plaintiff suffered from the following severe impairments: cervical and lumbar spine degenerative disc disease; sciatica; diabetes with polyneuropathy; and status post right shoulder rotator cuff surgery with ongoing symptomatology. (AR 24.) The ALJ determined that Plaintiff retained the residual functional capacity to perform a restricted range of light work as defined in 20 CFR 404.1567(b). Among the limitations assessed by the ALJ, Plaintiff could not reach overhead with his right arm and could only occasionally reach in any direction with the right arm. (AR 25.) Given the foregoing RFC, the ALJ found that Plaintiff was incapable of performing his past relevant work. (AR 30.) Relying upon the testimony of the VE, the ALJ found that Plaintiff was able to perform jobs existing in significant numbers in the national economy. (AR 30-31.) Thus, the ALJ concluded that Plaintiff was not disabled at any time from July 22, 2011 to the date of the decision. (AR 31.)

The Appeals Council denied Plaintiff's request for review (AR 1-7), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUES

1. Whether the ALJ erred in his RFC assessment because he failed to address the opinion of chiropractor, Arlet Agazaryan, D.C.
2. Whether the ALJ erroneously failed to resolve a conflict between the VE's testimony and the Dictionary of Occupational Tittles ("DOT").

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See*

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### 1. The ALJ's residual functional capacity ("RFC") assessment

In his summary of the medical evidence, the ALJ began by noting that Plaintiff's alleged onset date was July 22, 2011 but that he had read and considered all of the medical evidence in the record including records predating the onset date. In relation to Plaintiff's shoulder impairment and limitations stemming therefrom, the ALJ discussed Plaintiff's March 1, 2011 MRI of his right shoulder, which revealed a tear of the superior labrum and partial tears of the subscapularis, supraspinatus, and infraspinatus tendons. (AR 27, 409.) On March 9, 2011, Plaintiff underwent an electrodiagnostic consultation based upon complaints of right shoulder pain and lack of motion, as well as occasional neck and right forearm pain. An EMG diagnostic study of Plaintiff's upper extremities included abnormal findings. After a March 17, 2011 examination, Plaintiff was diagnosed with bilateral shoulder sprain and strain as well as tendinitis/impingement syndrome, bilateral shoulders with possible internal derangement. (AR 27, 356, 401-407.)

Next, the ALJ noted that Plaintiff underwent right shoulder surgery in July 2011. (AR 27, 294, 358.) During a postsurgical examination in October 2011, Plaintiff complained of neck and right shoulder pain, and evaluation revealed tenderness and limited right should range of motion. (AR 306.) Plaintiff continued to complain of right shoulder pain during a November 2011 examination, and his

treatment notes indicate tenderness and reduced range of motion. (AR 27, 311.)

A May 2012 arthrogram study of Plaintiff's right shoulder showed evidence of past surgical repair, partial thickness tearing of the infraspinatus and supraspinatus tendons, and mild to moderate osteoarthritis of the AC joint. (AR 28, 288-290.) In July 2012, Plaintiff was seen by Douglas Roger, M.D. for an orthopedic evaluation as part of his workers' compensation case. Plaintiff complained of pain in the cervical spine as well as bilateral shoulder pain, worse on the right. Examination showed residual right shoulder tenderness and diminished range of motion as well as a 50% strength deficit, and left shoulder tenderness to palpation and diminished range of motion. (AR 28, 291-295.)

Plaintiff underwent an orthopedic evaluation by Anthony Fenison, M.D. in November 2012, which was conducted as part of his workers' compensation case. Plaintiff complained of pain, aching, numbness, and weakness in his right shoulder and arm. Examination showed diminished right hand grip strength, right shoulder tenderness, strength was 4+/5 when comparing the right and left extremities, and diminished right shoulder range of motion. Diagnostic studies were unremarkable. Dr. Fenison diagnosed Plaintiff with status post arthroscopic debridement of the right shoulder with mini-open rotator cuff repair. (AR 348-350.)

Finally, the ALJ discussed medical examinations in 2013, 2014, and 2015, during which Plaintiff complained of sciatica, low back and foot pain, but not shoulder pain. (AR 28-29, 418-426, 431-436, 438-440, 447-450, 456-459, 465-468, 470-473.)

In assessing Plaintiff's RFC, the ALJ assigned significant weight to the opinions of Lucy Sauer, M.D., the State agency medical consultant on initial review, and to Plaintiff's treating physician, Dr. Fenison. (AR 29 (citing 78-88, 351.) The ALJ adopted these physicians' opinions that Plaintiff could not perform overhead reaching with his right arm. The ALJ noted that neither physician opined that Plaintiff was limited in his ability to push, pull, or reach in all directions with his right arm.

Nevertheless, considering Plaintiff's subjective complaints and postsurgical findings of pain and weakness, the ALJ assessed a more restrictive limitation – namely, limiting Plaintiff to occasional pushing, pulling or reaching in any direction with the right arm. (AR 29.)

The ALJ gave some weight to the certain of the opinions of the State agency medical consultant on reconsideration. Citing the lack of objective findings to support them, however, the ALJ gave little weight to that physician's more extreme global functional limitations and, in particular, the limitations with respect to Plaintiff's left arm. (AR 29.)

The ALJ also gave little weight to the July 2012 opinion of Dr. Roger, who opined that Plaintiff was precluded from all "heavy lifting," right shoulder work above shoulder level, and left shoulder repetitive or prolonged overhead use. (AR 29.)

Plaintiff does not contend that the ALJ erred in assigning weight to the foregoing physicians' opinions. Rather, Plaintiff contends that the ALJ committed error in assessing Plaintiff's RFC because he failed to discuss the functional capacity evaluation report of chiropractor Arlet Agazaryan, D.C. (Plaintiff's Memorandum ("Mem.") at 4-6.)[1]

Dr. Fenison referred Plaintiff to Dr. Agazaryan in order to obtain a functional capacity evaluation, and Dr. Agazaryan performed that evaluation on February 23, 2011. (AR 385.) After conducting various tests, Dr. Agazaryan opined that Plaintiff had the following limitations: lift and carry no more than 23.5 pounds occasionally over a length of no more than 30 feet; "avoid activities requiring reaching"; "avoid activities at or above shoulder level"; no pushing or pulling of heavy objections"; avoid repetitive and forceful grasping: and "avoid climbing." (AR 394.)

---

[1] Because Plaintiff does not challenge any other aspect of the ALJ's RFC, the Court focuses its discussion on evidence related to Plaintiff's ability to reach.

As an initial matter, the ALJ stated that he had read and considered all of Plaintiff's medical records, including those complied before the alleged onset date of July 22, 2011. The ALJ cited Exhibits 1F though 8F, which would include Dr. Agazaryan's report. (*See* AR 27.) Thus, the record indicates that the ALJ satisfied his duty to consider all of the medical evidence. *See Kus v. Astrue*, 276 F. App'x 555, 557 (9th Cir. 2008) (ALJ properly considered chiropractor's report despite failing to discuss it where ALJ stated that "[c]onsideration has also been given [to] the reports of . . . other treating, examining and non-examining medical sources," a group that would include a chiropractor). The question remains whether the ALJ erred by failing to explicitly discuss Dr. Agazaryan's opinion in his decision.

In interpreting the medical record, the ALJ is not required to discuss "every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Rather, the ALJ need discuss only evidence that is significant and probative.

Arguably, Dr. Agazaryan's opinion was neither significant nor probative. To begin with, Dr. Agazaryan evaluated Plaintiff prior to his alleged date of onset – that is, July 22, 2011. Thus, an opinion about Plaintiff's limitations on February 23, 2011 is not directly probative of this application period. *See Imran v. Colvin*, 2015 WL 5708500, at *8 (C.D. Cal. Sept. 28, 2015) (ALJ did not err in failing to address physician's opinion rendered in 2003 because "[a]lthough she alleged disability beginning in 2002, her review period for purposes of her application for SSI began in September 2009 (one month prior to her application), and for widow's benefits in March 2012. Thus, this 2003 evidence is not directly probative of this application period."). More importantly, Dr. Agazaryan's examination occurred prior to Plaintiff's right shoulder surgery. Consequently, whether or not Dr. Agazaryan's opinion accurately described Plaintiff's pre-operative shoulder limitations as of February 2013, it had little, if any, probative value to Plaintiff's shoulder limitations after his surgery.

Finally, it is significant that Dr. Agazaryan's evaluation was performed pursuant to Dr. Fenison's request and that Dr. Fenison considered it in reaching his own conclusion. In preparing his November 2012 Orthopedic Panel Qualified Medical Reevaluation and Report, Dr. Fenison specifically considered and discussed Dr. Agazaryan's report as well as Plaintiff's other medical records. Dr. Fenison also performed an examination of Plaintiff. (AR 346-366.) In formulating his own opinion regarding Plaintiff's functional limitations – which did not include a general limitation on reaching as opposed to overhead reaching – Dr. Fenison necessarily rejected any contradictory opinions in Dr. Agazaryan's report. (*See* AR 351.) As noted above, the ALJ discussed and substantially adopted Dr. Fenison's opinion, and by doing so, implicitly agreed with Dr. Fenison's evaluation of the lack of probative value of the chiropractor's pre-operative opinion.

Given the lack of significance of Dr. Agazaryan's pre-operative opinion, it follows that the ALJ did not commit error in failing to discuss it in his written decision.

Moreover, even if the ALJ did err, the error was harmless. An ALJ's failure to address pertinent evidence is harmless if the error did not affect the outcome of the case. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055-1056 (9th Cir. 2006). According to Plaintiff, the critical distinction between the RFC assessed by the ALJ and the opinion of Dr. Agazaryan is that the ALJ's contemplates occasional reaching with the right upper extremity whereas Dr. Agazaryan assessed "avoidance of reaching." (Plaintiff's Mem. at 5.) The ALJ, however, discussed and rejected the opinions of physicians who assessed similar limitations. Specifically, the ALJ rejected the opinion of State agency physician Seung Park, M.D., who opined that Plaintiff was limited in reaching in front and/or laterally and the opinion of Dr. Roger, who opined that Plaintiff was precluded from right shoulder work at and above

shoulder level. (AR 29, 98-101, 295.)² Thus, to the extent that the ALJ erred in failing to discuss Dr. Agazaryan's opinion, it was harmless because there is no reasonable likelihood that the opinion would have affected the ALJ's assessment of Plaintiff's RFC. *See Kelly v. Colvin*, 669 F. App'x 401, 402 (9th Cir. 2016) (ALJ's error in failing to discuss physicians' opinions regarding plaintiff's functional limitations was harmless in light of ALJ's specific and legitimate reasons for discounting similar opinions); *Sullivan v. Colvin*, 588 F. App'x 725, 726 (9th Cir. 2014) ("while the ALJ erred in failing to discuss the medical records . . . including Registered Nurse Don Bischko and Dr. Anjan Sattar's findings, this error—in light of the record as a whole—was harmless."); *Imran*, 2015 WL 5708500, at *8 (any error in ALJ's failure to discuss a doctor's report was harmless because the ALJ considered and properly discounted the similar opinions of other doctors).³

### 2. The conflict between the VE's testimony and the DOT

At step five of the sequential evaluation, the Commissioner bears the burden of establishing that there are available jobs that the claimant can perform notwithstanding his or her functional limitations. *See Gutierrez v. Colvin,* 844 F.3d 804, 806 (9th Cir. 2016). "To aid in making this determination, the ALJ may rely on an impartial vocational expert to provide testimony about jobs the applicant can perform despite his or her limitations." *Gutierrez*, 844 F.3d at 806-807 (citing *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). If a VE's "opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the *Dictionary*, then the ALJ must ask the expert to reconcile the conflict before relying

---

² Plaintiff does not contend that the ALJ's rejection of these physicians' opinions was improper.

³ Dr. Agazaryan is a chiropractor and, therefore, is not an "acceptable medical source." *See* 20 C.F.R. § 404.1513(a), (d)(1); *see Rose v. Colvin*, 2014 WL 3899497, at *2 (C.D. Cal. Aug. 11, 2014). Generally, the ALJ must provide only "germane reasons" before rejecting a chiropractor's opinion. *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); 20 C.F.R. § 404.1527(b), (f); SSR 06-3P.

on the expert to decide if the claimant is disabled." *Gutierrez,* 844 F.3d at 807; *see Massachi v. Astrue*, 486 F.3d 1149, 1152-1153 (9th Cir. 2007).

Here, the ALJ asked the VE to assume the existence of a hypothetical person with Plaintiff's RFC, which as set forth above, included the limitation of no overhead reaching with the right arm and only occasional reaching in any direction with the right arm. (AR 73.) The VE testified that the hypothetical person could not perform Plaintiff's past relevant work, but could perform jobs that existed in significant numbers in the national economy. The VE provided three representative jobs: assembler of plastic hospital products (DOT 712.687-010), cashier II (DOT 211.462-010), and toy assembler (DOT 731.687-034). (AR 72-74.) The ALJ asked the VE if her testimony was consistent with the DOT, and she testified that it was. The VE also remarked that the DOT did not specify direction or height in reaching, and that her testimony was based upon her own training and experience, observation of jobs and review of job duties. (AR 74.) The ALJ adopted the VE's testimony and found that Plaintiff could perform the jobs of assembler of plastic hospital parts, cashier II, and toy assembler. (AR 31.)

Plaintiff argues that the ALJ erred because he failed to resolve an apparent conflict between the VE's testimony and the DOT descriptions of each of the three occupations.

All three occupations identified by the VE require frequent reaching. "Frequent" means occurring from one-third to two-thirds of the time, and "reaching" means "extending the hands and arms in any direction." *See* SSR 83-10; SSR 85-15, 1985 WL 56857, at *7; *Nelson v. Colvin*, 2016 WL 1532226, at *2-*3 (C.D. Cal. Apr. 14, 2016). As discussed, Plaintiff is precluded from performing overhead reaching with his right arm and limited to occasional reaching in all directions with his right arm. "Occasionally" is defined as "from very little up to one-third of the time," i.e., "no more than about 2 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5.

The Commissioner argues that Plaintiff's argument is foreclosed by *Gutierrez*, 844 F.3d 804. (Defendant's Mem. at 7.) In that case, as here, the VE testified that the claimant could work as a cashier despite her inability to reach above shoulder level with her right arm. *Gutierrez*, 844 F.3d at 807. The Ninth Circuit held that there was no apparent conflict between the VE's testimony and the DOT's requirement of frequent reaching because, based on common experience, it is "unlikely and unforeseeable" that a cashier would need to reach overhead, and even more rare for one to need to reach overhead with both arms. *Gutierrez*, 844 F.3d at 808-809 & 809 n.2. Thus, if Plaintiff is arguing that a conflict allegedly exists between the job of cashier II and his inability to reach overhead with his right arm, the Commissioner is correct that this argument is precluded by *Gutierrez*.

*Gutierrez,* however, is not dispositive of any apparent conflict between the requirement of frequent reaching in all three jobs and Plaintiff's limitation to occasional reaching in all directions (not just above the shoulder) with his right arm. The Commissioner argues that "there is no conflict where the DOT is silent on whether the jobs require a particular limitation." (Defendant's Mem. at 8.) To the extent that the Commissioner attempts to rely upon the absence of an express bilateral reaching requirement, her argument is unpersuasive. It is true that the DOT does not state expressly that the jobs identified by the VE require reaching with *both* arms. *See Davies v. Colvin*, 2016 WL 6637922, at *6-*7 (C.D. Cal. Nov. 8, 2016) (noting that no occupation listed in the DOT specifies whether the "generic" reaching requirement is with one arm or both arms). However, the Ninth Circuit's decision in *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017), indicates that it is generally inappropriate to conclude that a claimant with a unilateral limitation can perform a job simply because the DOT fails to include an explicit bilateral requirement. In *Lamear*, the Commissioner argued that the court should presume that "the handling, fingering, and reaching requirements are unilateral since the DOT does not expressly

state that they demand both hands." *Lamear*, 865 F.3d at 1206. The Ninth Circuit rejected that argument, explaining:

> That argument assumes away the question of whether these requirements necessitate both hands, an issue that has divided many courts. As discussed above, we cannot determine from this record, the DOT, or our common experience whether the jobs in question [office helper, mail clerk, or parking lot cashier] require both hands . . . .

*Lamear*, 865 F.3d at 1206 (footnote omitted).

Here, based on the record, the DOT and common experience, the Court cannot determine that the three jobs at issue require frequent reaching of only the non-dominant arm.

The DOT describes the general tasks for each of the jobs as follows:

<u>Assembler of plastic hospital products</u>

Reviews work order and selects component parts to assemble specified product. Fits and assembles parts together, using adhesives and hand tools, or heats, bonds, and welds parts together, using automatic equipment. Visually inspects products for defects, verifies conformance to specifications, and rejects defective products. Packages assembled product into plastic bag or other container and seals package, using sealing machine. Packs sealed product and instructional information into cartons, and labels cartons with identifying information. May stack cartons in sterilization chamber, seal chamber, and turn valves to admit gas into chamber to sterilize product.

DOT 712.687-010.

<u>Cashier II</u>

Recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on

11

hand. May be required to know value and features of items for which money is received. May give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. May operate cash register with peripheral electronic data processing equipment by passing individual price coded items across electronic scanner to record price, compile printed list, and display cost of customer purchase, tax, and rebates on monitor screen.

DOT 211.462-010.

Toy assembler

Selects parts specified and positions parts in designated relationship to each other, using hands, tweezers, or pliers. Assembles and fastens parts of toys together, using clips, glue, jig, screws, dowels, nails, hand tools, and portable powered tools. Inspects toys for specified color and operation of parts. May tend previously set up machines, such as drill press, reamer, welding machine, nailing machine, flanging press, and punch press to drill, cut, weld, trim, fit, or insert toy parts on assembly line.

DOT 731.687-034.

Although not entirely clear, the DOT's descriptions of the jobs identified by the VE suggest that frequent reaching with both arms would be necessary to perform "essential, integral, or expected" tasks in an acceptable and efficient manner. *See Lamear*, 865 F.3d at 1205 (considering tasks described in DOT such as opening and sorting mail, stuffing envelopes, distributing paperwork, and counting change, it was likely and foreseeable that using both hands would be necessary to perform "essential, integral, or expected" tasks in an acceptable and efficient manner). For instance, the assembler of hospital parts requires fitting, assembly and packing; the cashier II requires operating a cash register, issuing receipts or tickets to customers and giving cash refunds; and the toy assembler positions, assembles and fastens parts together. The absence of express statements in the DOT job descriptions for these occupations about reaching with both arms is insufficient for the Court to presume

that such activity with both arms is − contrary to the jobs' requirements of "frequent" reaching − no more than occasional.

As to application of common experience, the Court finds that the jobs of assembler of plastic hospital products and toy assembler are too far removed from common experience for the Court to reach the conclusion that frequent reaching is reasonably needed by only one arm. *See Cochrane v. Berryhill*, 260 F. Supp. 3d 1317, 1336 (D. Or. 2017) ("[W]hile anyone who has walked into a corner grocery may be able to observe whether a cashier frequently reaches overhead, the same cannot be said for a photofinishing counter clerk which is a more specific position."); *Marney v. Berryhill*, 2017 WL 4391716, at *14 (D. Or. Sept. 12, 2017) ("Here, the jobs of circuit board assembler, dye attacher, and electronics worker are far more amorphous, and do not involve the same degree of common understanding of duties that a cashier performs."). With regard to the third job − cashier II − the Court has common experience relating to this position, and that experience leads to the conclusion that it would be likely and foreseeable for a cashier to need to frequently reach with both arms to perform the duties of the job. *Cf. Gutierrez*, 844 F.3d at 808 (no conflict with DOT where necessity of task is "unlikely and unforeseeable"). As Plaintiffs states, "[a] cashier must perform myriad duties that presumably would require bimanual dexterity such as making and handing out change; cashing checks; give cash refunds or give credit; operate cash register; and so forth." (ECF No. 18 at 7.) It therefore remains the case that an apparent conflict arose here. *See Lamear*, 865 F.3d at 1206.

Finally, where there is an apparent unresolved conflict between VE testimony and the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the [VE] evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p; *Massachi*, 486 F.3d at 1153. In *Massachi,* the Ninth Circuit cited the following examples of reasonable explanations for a VE's deviation from the DOT: (1) the DOT does not provide information about all

occupations; (2) information about a particular job not listed in the DOT may be available elsewhere; or (3) the general descriptions in the DOT may not apply to specific situations. *Massachi,* 486 F.3d at 1153, n.17.

The ALJ here inquired about any conflict between the VE's testimony and the DOT, and the VE denied any conflict and further testified that the DOT failed to differentiate between overhead and directional reaching. Nothing in the VE's testimony, however, explains the apparent discrepancy between the frequent reaching required by the jobs she identified and Plaintiff's limitation to occasional reaching in all directions with his dominant right arm. *See Hernandez v. Colvin,* 2016 WL 1071565, at *5 (C.D. Cal. Mar. 14, 2016) ("The fact that the ALJ asked the VE to explain any conflicts with the DOT and the VE did not identify any conflicts does not absolve the ALJ of the duty to resolve the apparent conflict.").

Because the Court cannot conclude that the error was harmless, reversal is required. *See Davies*, 2016 WL 6637922, at *6-*7 ("Until the Ninth Circuit resolves the issue [whether the DOT's reaching requirement is bilateral] in binding precedent, the more prudent (and certainly not overly difficult) course is for the ALJ to seek, and a VE to provide, a reasonable explanation for the potential conflict that arises when a claimant has a reaching limitation that deviates from the DOT reaching description for the occupations suggested by the VE, such as in this case"); *Hernandez,* 2016 WL 1071565, at *5 ("Given the possible conflict between the VE's testimony and the DOT, the Court cannot determine whether the ALJ properly relied on the VE's testimony. . . .The remedy under these circumstances is a remand so the ALJ may conduct the appropriate inquiries.")

## REMEDY

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient

reasons for rejecting evidence. . . . If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record on the whole is not fully developed and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act).

Accordingly, the appropriate remedy is a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[4]

IT IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 5/16/2018

———————————————
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

---

[4] It is not the Court's intent to limit the scope of the remand.